Hon. Orin Lehman Commissioner Office of Parks, Recreation and Historic Preservation
You have asked whether flare launchers approved by the United States Coast Guard for use in sending distress signals into the air are firearms.
The question is made difficult by the case of People on the complaint ofAltomari v Evergood, 74 N.Y.S.2d 12 (NY City Ct, 1947), in which a committing magistrate rendered a comprehensive opinion concerning a "Very pistol". The Very pistol was a Navy launcher used during World War I to fire warning flares. A burglar found the pistol, discovered that shotgun shells would fit it, and used the pistol to kill a policeman. The magistrate found that the pistol was a firearm.
The flare launchers approved by the Coast Guard differ in crucial ways from the Very pistol. That pistol was a sturdy metal device that would accept standard shotgun shells. The approved launchers are not sturdy metal devices and are specifically designed not to accept conventional ammunition. It is our understanding that the Coast Guard conducted tests of various flare launchers and found that in almost all instances a standard shotgun shell could be inserted in the firing "pistol" only by force and that in almost all instances the "pistol" disintegrated upon being fired. It is also our understanding that the Coast Guard required modification of one "pistol" that would accept a conventional shell.
It thus appears that both the Coast Guard and the manufacturers have gone to considerable lengths to see that flare launchers made available to boatowners are not capable of being adapted to use as a pistol. We recognize that a person could fire a flare at someone and injure him, but this does not turn the launcher into a firearm that requires a permit. We recognize also that a person could use the launcher, which looks like a pistol, for unlawful purposes in the same manner that a toy pistol can be used, but this does not turn the launcher into a firearm either.
In considering this problem of categorizing the flare launcher, it is important to distinguish between something that can be used as a weapon — e.g., an automobile, a butcher knife, a hammer — and something that is designed to be a weapon — e.g., a pistol, a switchblade knife, a cane sword. (In section 265.00 of the Penal Law, the definitions of "chuka stick" and "electronic dart gun" refer to "any device designed primarily as a weapon" [subds. 14 and 15-a].) The flare launcher is not designed as a weapon and is not easily turned into a weapon except when combined with a flare. We do not think that the Legislature in requiring a permit for a pistol which may be concealed upon the person intended to include a flare launcher that looks like a pistol but only with difficulty can be used as such.
This conclusion is supported by section 270.00(1) of the Penal Law, which excludes from the definition of "fireworks", possession of which is punishable as a misdemeanor, "marine distress signals of a type approved by the United States coast guard". (The exclusion was added by L 1959, ch 851.) We do not believe that the Legislature would have excluded "marine distress signals" from the Penal Law and yet intended to require a permit for a launcher approved by the Coast Guard for use in sending these very same distress signals.
We conclude that flare launchers approved by the Coast Guard and not capable of firing conventional amunition are not firearms as defined in the Penal Law.